# Exhibit A

THE ASSEMBLY

STATE OF NEW YORK

ALBANY

CHAIR
Committee on
Economic Development, Job Creation, Commerce and Industry

COMMITTEES
Agriculture
Alcoholism and Drug Abuse Higher Education

ALBERT A. STIRPE, JR.
Assemblyman 127th District

*October 1st, 2024*

*James McDonald MD MPH*
*Commissioner*
*New York State Department of Health*
*Corning Tower*
*Empire State Plaza, Albany, NY 12237*

Dear Commissioner McDonald,

We have been monitoring the implementation of the procurement process for the selection of a single statewide fiscal intermediary (FI) for the Consumer Directed Personal Assistance Program (CDPAP) and have growing concerns regarding the Request for Proposals (RFP) issued by the Department of Health on June 17, 2024.

As you are aware, migrating the more than 250,000 people who are currently enrolled in the program from approximately 600 small businesses is a significant undertaking. Given that CDPAP is vital to allowing New York's seniors and disabled to live independently at home, the RFP criteria, timeline, and transition is not proceeding in a manner that reflects the thought and planning necessary for an undertaking of this magnitude.  We cannot allow this transition to undermine the core services and access to care CDPAP offers.

As further discussed below, basic information regarding the program that will materially shape the RFP selection process is lacking, the RFP criteria is stricter than the enabling legislation, the RFP and implementation timelines are too aggressive to maintain the integrity of the Program and no meaningful transition plan has been articulated to our constituents. Specifically, we believe that current plan is flawed for the following reasons:

- **Lack of basic information regarding the existing program:** the Department of Health ("Department") has not informed prospective bidders of seemingly fundamental data on the program, including the number of consumer directed personal assistants (PAs) currently employed in the program or the cultural and language requirements of consumers or PAs currently in the program. Without this fundamental programmatic data, neither Department nor the Legislature will be able to evaluate the success or failure of the transition, outside of anecdotal reports, and RFP requirements for the prospective bidders to demonstrate they have the "appropriate cultural and linguistic competencies" cannot be met or evaluated.

- **Lack of meaningful selection criteria:** The RFP does not include relevant performance standards necessary to make a "Best Value" determination. In addition to fundamental information on PAs and the languages and cultures served by the program mentioned above the RFP is silent on critical information such as maximum time frames for Consumer and Personal Assistant enrollment or standards for responses to communications. Even compliance measures are left undefined in the RFP, with the Department clarifying that they will allow the selected bidder to determine those requirements during contracting. The open-ended language of the RFP allows for a selection process that lacks transparency and accountability, making it possible for the Department to make any selection without an objective basis that is in the best interests of our constituents.

- **The RFP criteria is stricter than the enabling legislation:** By unilaterally and arbitrarily creating a requirement that excludes FIs also operating as licensed home care services agencies ("LHCSAs") from bidding on the RFP, even if the FI is eligible based on the criteria enacted by the Legislature, the Department has taken steps to ensure that no New York-based FI is eligible to bid. This administrative decision by the Department -- a measure that was explicitly rejected by the Legislature during the budget process -- ignores the Legislature's role in governing and establishes a precedent where the Department, in its sole authority, can determine which lines of business health care providers may jointly operate, potentially excluding hospitals from owning LHCSAs or nursing home in the future.

- **The RFP includes arbitrary subcontracting requirements**: The RFP's requirement that the selected statewide FI only needs to offer a contract to Independent Living Centers ("ILCs") and other entities that have been providing CDPAP services at terms determined by the statewide FI, rather than mandating subcontracting as required by statute, is a significant deviation from the legislative intent. This alteration of statutory language undermines the role subcontractors providing critical support services and fails to ensure participation in the CDPAP.

The timeline established for the RFP process and its implementation are unnecessarily aggressive, particularly in light of other administrative actions recently initiated by the Department of Health:

- **Administrative cuts:** On August 1st, the Department initiated a significant funding reduction to CDPAP. Specifically, the Department has reduced funding to the Medicaid managed care plans which contract with FIs to administer the program, directing these plans to reduce funding to FIs to offset the cut. While the Budget highlighted a $200M reduction for FIs, those savings were attributed on the scorecard to the single statewide FI, not reimbursement cuts. Further, these cuts are not limited to $200 million. The total amount of the cut is $700 million. This unanticipated cut is resulting in a real-time crisis for FIs who are struggling to cover the hourly rates for caregivers. This rate reduction (which was not discussed or negotiated with the Legislature) is destabilizing the program ahead of the structural change approved in the Budget.

- **Overly aggressive RFP timeline:** Despite three separate amendments, the Department did not modify either the deadline for submission of proposals of August 21, 2024 or the anticipated contract start date of October 1, 2024. Moreover, a bid submission date of August 21, 2024, with a contract start state of October 1, 2024 only provides the Department with forty-one days to review proposals, score those proposals, make an award, and then enter into a contract with the winning bidder. Given the significance of this undertaking, we are concerned that this short period of time does not allow the Department to do adequate due diligence on the potential bidders.

- **Implementation timeline:** Despite an implementation date of April 1, 2025, the Department has not published any information regarding the transition, conducted an outreach or educational campaign to discuss the changes, nor sought federal approval, as required under federal law. Given the need to transition 250,000 consumers, and over 300,000 PAs, to the new statewide FI, a well thought out and planned awareness campaign, similar to that which the Department ran for Medicaid recertification at the end of the Public Health Emergency, is not only merited, but necessary, to ensure continuity of care and a smooth transition for workers in order that there are no lapses in paychecks, both problems that have been seen in states with smaller populations and more thoughtful transition plans.

As we are already starting to see, moving forward with the current RFP will likely lead to significant legal challenges and undermine the quality of care for New York's Medicaid beneficiaries. We strongly believe that a more equitable and prudent approach must be taken to ensure that the CDPAP continues to serve the best interests of the people of New York.

We encourage you to halt the current procurement process for the statewide single FI and work with the state Legislature and stakeholders on ways to enhance and reform the program in a manner that eliminates problems and excessive costs while building on its benefits instead of needlessly stripping benefits from our neediest population.

We look forward to your attention to this matter and hope for a resolution that better serves the interests of New Yorkers.

Sincerely,

*[signature: Albert A. Stirpe Jr.]*

Albert A. Stirpe, Jr.
Member, NYS Assembly
127th District

*[signature]*

M/A Sam Berger
AD 27

*[signature]*

M/A Sarah Clark
AD 136

*[signature]*

M/A William Conrad
AD 140

*[signature]*

M/A Chris Eachus
AD 99

*[signature]*

M/A Simcha Eichenstein
AD 48

*[signature]*

M/A Harvey Epstein
AD 74

*[signature]*

M/A Deborah J. Glick
AD 66

*[signature]*

M/A Emily Gallagher
AD 50

*[signature]*

M/A Andrew Hevesi
AD 28

*[signature]*

M/A Pamela Hunter
AD 128

*[signature]*

M/A Chantel Jackson
AD 79

*[signature]*

M/A Anna Kelles
AD 125

*[signature]*

M/A Ron Kim
AD 40

*[signature]*

M/A Jennifer Lunsford
AD 135

M/A Karen McMahon
AD 146

M/A Nily Rozic
AD 25

M/A Fred Thiele
AD 1

M/A Phara Souffrant Forrest
AD 57

M/A Phil Steck
AD 110

M/A Steve Stern
AD 10

M/A Tony Simone
AD 75

M/A Sarahana Shrestha
AD 103

M/A Catalina Cruz
AD 39

M/A Jonathan Rivera
AD 149

M/A Monica Wallace
AD 143

M/A Donna Lupardo
AD 123

M/A David Weprin
AD 24

M/A Jeffrey Dinowitz
AD 81

DISTRICT OFFICE: 7293 Buckley Road, Suite 201, N. Syracuse, New York 13212 • 315-452-1115, FAX 315-452-1119
ALBANY OFFICE: Room 847, Legislative Office Building, Albany, New York 12248 • 518-455-4505, FAX 518-455-5523
EMAIL: stirpea@nyassembly.gov

M/A Scott Bendett
AD 107

M/A Landon Dais
AD 77

DISTRICT OFFICE: 7293 Buckley Road, Suite 201, N. Syracuse, New York 13212 • 315-452-1115, FAX 315-452-1119
ALBANY OFFICE: Room 847, Legislative Office Building, Albany, New York 12248 • 518-455-4505, FAX 518-455-5523
EMAIL: stirpea@nyassembly.gov