UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GLIDEDOWAN, LLC D/B/A ALL-AMERICAN
HOMECARE AGENCY, INC.,

                              Plaintiff,                        Case No. 24-6731

     -against-

NEW YORK STATE DEPARTMENT OF HEALTH and
JAMES V. MCDONALD, IN HIS OFFICIAL CAPACITY AS
COMMISSIONER OF THE NEW YORK STATE
DEPARTMENT OF HEALTH,

                              Defendants.
_____

# Plaintiff's Memorandum of Law in Support of Motion for Preliminary Injunction

BOND, SCHOENECK & KING, PLLC
Edward P. Hourihan, Jr., Esq.
Roger A. Bearden, Esq.
Jeremy M. Sher, Esq.
*Attorneys for Plaintiff*
350 Linden Oaks, Third Floor
Rochester, New York 14625
(585) 362-4700
hourihe@bsk.com
rbearden@bsk.com
jsher@bsk.com

**TABLE OF CONTENTS**

Page

Preliminary Statement.................................................................................................... 1

Factual Background ....................................................................................................... 2

The Preliminary Injunction Standard............................................................................. 3

Argument ....................................................................................................................... 4

    1.    Defendants Threaten Plaintiff with Irreparable Harm ......................................... 4

    2.    Defendants' Creation of a FI Monopoly That
        Categorically Excludes Plaintiff Violates the Equal Protection Clause ............................ 5

    3.    Defendants' Nullification of Plaintiff's Contracts Violates the Contracts Clause ............ 6

    4.    Defendants' Destruction of Plaintiff's Business Violates the Due Process Clause........... 7

    5.    Defendants' Elimination of Plaintiff's Property
        Rights without Compensation Violates the Takings Clause............................... 8

    6.    Defendants' Interference in Plaintiff's Business Violates the Commerce Clause............. 9

    7.    Defendants' Punitive Acts Constitute a Bill of Attainder................................. 10

    8.    The Balance of Hardships and Equities Favors Plaintiff................................. 10

Conclusion ................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Peck Day Mem'l Hosp. v. Smith*,
    No. 2:21-cv-102, 2022 WL 850745 (D. Vt. Mar. 22, 2022)......................................................6

*Allied Structural Steel Co. v. Spannus*,
    438 U.S. 234 (1978)..................................................................................................................7

*Am. Trucking Ass'ns v. Scheiner*,
    483 U.S. 266 (1987)..................................................................................................................9

*Bank of Am., N.A. v. Won Sam Yi*,
    294 F. Supp. 3d 62 (W.D.N.Y. 2018).......................................................................................3

*Barletta v. Rilling*,
    973 F. Supp. 2d 132 (D. Conn. 2013).......................................................................................5

*Blossom S., LLC v. Sebelius*,
    No. 13-CV-6452L, 2013 WL 4679275 (W.D.N.Y. Aug. 30, 2013)..........................................4

*Brown & Williamson Tobacco Corp. v. Pataki*,
    320 F.3d 200 (2d Cir. 2003)......................................................................................................9

*Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.*,
    601 F.2d 48 (2d Cir. 1979)......................................................................................................11

*Buffalo Teachers Fed'n v. Tobe*,
    464 F.3d 362 (2d Cir. 2006)......................................................................................................7

*Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
    598 F.3d 30 (2d Cir. 2010)........................................................................................................4

*Consol. Edison Co. v. Pataki*,
    117 F. Supp. 2d 257 (N.D.N.Y. 2000)..................................................................................5, 10

*Consol. Edison Co. v. Pataki*,
    292 F.3d 338 (2d Cir. 2002)....................................................................................................10

*DoorDash, Inc. v. City of New York*,
    --- F Supp 3d ---, 2023 WL 6118229 (S.D.N.Y. Sept. 19, 2023) ............................................5

*Energy Reserves Grp. v. Kan. Power & Light Co.*,
    459 U.S. 400 (1983)..................................................................................................................7

*Faively Transp. Malmo AB v. Wabtec Corp.*,
  559 F.3d 110 (2d Cir. 2009)...............................................................................3

*Fed. Home Loan Mortg. Corp. v. N.Y. State Div. of Hous. & Cmty. Renewal*,
  83 F.3d 45 (2d Cir. 1996).....................................................................................8

*Fulton Corp. v. Faulkner*,
  516 U.S. 325 (1996)...............................................................................................9

*Gallivan v. Cuomo*,
  71 Misc 3d 589 (Sup. Ct. Erie County 2021) .........................................................5

*Hartford Courant Co. v. Carroll*,
  986 F.3d 211 (2d Cir. 2021)..................................................................................3

*Hunter v. Cortland Hous. Auth.*,
  714 F. Supp. 3d 46 (N.D.N.Y. 2024).....................................................................11

*Immaculate Heart Cent. Sch. v. N.Y. State Pub. High Sch. Athletics Ass'n*,
  797 F. Supp. 2d 204 (N.D.N.Y. 2013)....................................................................5

*Jolly v. Coughlin*,
  76 F.3d 468 (2d Cir. 1996)....................................................................................4

*Jones v. Wolf*,
  467 F. Supp. 3d 74 (W.D.N.Y. 2020).....................................................................4

*L.V.M. v. Lloyd*,
  318 F. Supp. 3d 601 (S.D.N.Y. 2018).....................................................................3

*Lucas v. S.C. Coastal Council*,
  505 U.S. 1003 (1992).............................................................................................8

*Mary Hitchcock Mem'l Hosp. v. Cohen*,
  No. 15-cv-453-LM, 2016 WL 1735818 (D.N.H. May 2, 2016) ...............................6

*Merrifield v. Lockyer*,
  547 F.3d 978 (9th Cir. 2008) ................................................................................6

*Mitchell v. Cuomo*,
  748 F.2d 804 (2d Cir. 1984)..................................................................................4

*Molinari v. Bloomberg*,
  564 F.3d 587 (2d Cir. 2009)..................................................................................8

*New York v. U.S. Dep't of Homeland Sec.*,
  969 F.3d 42 (2d Cir. 2020).....................................................................................3

*Nixon v. Adm'r of Gen. Servs.*,
   433 US 425 (1977)..................................................................................................10

*Nken v. Holder*,
   556 U.S. 418 (2009)..................................................................................................3

*Or. Waste Sys., Inc. v. Dep't of Envtl. Quality*,
   511 U.S. 93 (1994)....................................................................................................9

*Park Ave. Tower Assocs. v. City of New York*,
   746 F.2d 135 (2d Cir. 1984)...................................................................................7, 8

*Penn Cent. Transp. Co. v. City of New York*,
   438 U.S. 104 (1978)..................................................................................................9

*Pike v. Bruce Church, Inc.*,
   397 U.S. 137 (1970)..................................................................................................9

*Rinaldi v. Yeager*,
   384 U.S. 305 (1966)..................................................................................................5

*Rochester Drug Co-op. v. Hiscox Ins. Co.*,
   466 F. Supp. 3d 337 (W.D.N.Y. 2020)................................................................3, 10

*Sanitation & Recycling Indus., Inc. v. City of New York*,
   107 F.3d 985 (2d Cir. 1997)......................................................................................7

*St. Joseph Abbey v. Castille*,
   712 F.3d 215 (5th Cir. 2013) ....................................................................................5

*United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*,
   550 U.S. 330 (2007)..................................................................................................9

*United States v. Brown*,
   381 U.S. 437 (1965)................................................................................................10

*Vacco v. Quill*,
   521 U.S. 793 (1997)..................................................................................................5

*Wash. Health Care Ass'n v. Arnold-Williams*,
   601 F. Supp. 2d 1224 (W.D. Wash. 2009)................................................................7

*Windsor v. United States*,
   699 F.3d 169 (2d Cir 2012).......................................................................................5

*Winston v. City of Syracuse*,
   887 F.3d 553 (2d Cir. 2018)......................................................................................5

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)............................................................................................................3

*XL Specialty Ins. Co. v. Level Glob. Inv'rs, L.P.*,
    874 F. Supp. 2d 263 (S.D.N.Y. 2012)..........................................................................10

**Statutes and Other Authorities**

Social Services Law § 365-f ...............................................................................1, 2, 11

U.S. Const. Amend. V ....................................................................................................8

U.S. Const. Amend. XIV, § 1 ........................................................................................5

U.S. Const. art. I, § 8, cl. 3............................................................................................9

U.S. Const. art. I, § 10...................................................................................................6

U.S. Const. art. I, § 10, cl. 1........................................................................................10

Plaintiff, Glidedowan, LLC d/b/a All-American Homecare Agency, Inc. ("Plaintiff"), by and through its attorneys, Bond, Schoeneck & King, PLLC, respectfully submits this Memorandum of Law in support of a preliminary injunction prohibiting the New York State Department of Health ("DOH") and James V. McDonald, in his official capacity as Commissioner of the New York State Department of Health (the "Commissioner"), from implementing the amendments to Section 365-f of the New York State Social Services Law.

### Preliminary Statement

Plaintiff seeks to enjoin the implementation of a new scheme for the delivery of services in the New York State Consumer Directed Personal Assistance Program ("CDPAP"). CDPAP allows Medicaid beneficiaries who are otherwise eligible for home care—individuals who are chronically ill, physically disabled or otherwise eligible—to self-direct their own care. The new scheme, passed and signed into law through amendments to New York Social Services Law § 365-f in April 2024 and taking effect on April 1, 2025, would eviscerate the use of Fiscal Intermediaries ("FIs") throughout New York and destroy Plaintiff's FI business.

FIs provide financial management and other support services to eligible individuals ("Consumers"). Consumers select, train and manage their Personal Assistants ("PAs") who, in turn, provide home care services to Consumers. In short, FIs are crucial to CDPAP because they provide the administrative and other support, such as billing, payroll, and regulatory alignment, necessary to support Consumer self-direction.

Until the amendments take effect, Consumers can choose from hundreds of State-approved FIs and may change FIs at any time. But on April 1, 2025, under the amendments to § 365-f, New York will restrict the provision of all FI services in New York to a single out-of-state provider. Thus, New York will forbid *every FI now operating in the State, including Plaintiff*, from delivering FI services. This will drive Plaintiff (and doubtlessly most other New York FIs) out of business.

Because it faces the imminent destruction of its business in violation of its constitutional rights, Plaintiff seeks immediate injunctive relief.

**Factual Background**

Plaintiff provides a summary of the relevant facts here and refers to the accompanying Declaration of Marco C. Altieri for greater detail.

Social Services Law § 365-f authorizes New York State Medicaid recipients who are "chronically ill and/or physically disabled," or are otherwise eligible to receive Medicaid home health services, to self-direct their own home care. Section 365-f codifies CDPAP, a homecare program designed to allow vulnerable populations to remain at home and avoid institutional confinement. The Social Services Law refers to CDPAP program recipients as "Consumers."

Under CDPAP, Consumers are responsible for hiring, managing, and supervising their own home health care aides, referred to as "Personal Assistants." Subject to State regulation, FIs manage Consumers' payroll, recordkeeping, and other employer responsibilities with respect to PAs. Because these functions are beyond the capability of most Consumers, FIs are vital to the functioning of CDPAP. Without FIs, many Consumers would be unable to employ the PAs they need for vital home health care services.

The number of FIs currently operating in New York reflects the size and diversity of CDPAP. Approximately 280,000 Medicaid beneficiaries are enrolled in CDPAP. Over 300,000 PAs serve those Consumers.

Plaintiff has contracts with five leading insurance carriers and more than twenty counties—a region spanning from Buffalo to Watertown and the Capital Region, and including 3.1 million people. Plaintiff's contracts are its sole source of revenue. If Defendants carry out their plan to transform CDPAP into a single FI monopoly, they will nullify all of Plaintiff's contracts effective April 1, 2025. The only FI permitted to operate in the State will be Public Partnerships, LLC

("PPL"), a Georgia-headquartered company with a questionable history. In fact, Defendants did not even permit Plaintiff to bid for the monopoly that PPL obtained, as it restricted the bidding to FIs with out-of-state experience.

In ensuring that PPL has no competition in New York, Defendants will put Plaintiff out of business, to the detriment of not only Plaintiff and its employees but also the Consumers, counties, and insurers who rely on its essential services.

**The Preliminary Injunction Standard**

To obtain a preliminary injunction, "the moving party must establish the following: (1) a likelihood of irreparable harm absent preliminary relief; (2) a likelihood of success on the merits" on at least one of its claims; "(3) the balance of equities tipping in favor of the moving party; and (4) the public interest is served by an injunction." *Rochester Drug Co-op. v. Hiscox Ins. Co.*, 466 F. Supp. 3d 337, 347 (W.D.N.Y. 2020) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 618 (S.D.N.Y. 2018). Where, as here, the government is the opposing party, the third and fourth factors "merge" and the Court should consider them together. *Nken v. Holder*, 556 U.S. 418, 435 (2009) (*quoted in Hartford Courant Co. v. Carroll*, 986 F.3d 211, 224 (2d Cir. 2021)). However, a court may grant a preliminary injunction "on the strength of the[] first two factors [i.e., likelihood of success on the merits and irreparable harm] alone." *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 86 n.38 (2d Cir. 2020).

Irreparable harm is the most important factor in determining whether to grant a preliminary injunction. *Rochester Drug Co-op.*, 466 F. Supp. 3d at 349 (citing *Faively Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)). Thus, courts in the Second Circuit "generally permit a movant who has established irreparable harm to demonstrate *either* 'a likelihood of success on the merits, or . . . sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief.'" *Id.* at 351 (quoting *Bank of Am., N.A. v. Won*

3

*Sam Yi*, 294 F. Supp. 3d 62, 76 (W.D.N.Y. 2018)). "The 'serious questions' standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Id.* at 351-52 (quoting *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010)).

**Argument**

**1.      Defendants Threaten Plaintiff with Irreparable Harm**

Courts recognize two forms of irreparable harm relevant to this case. First, irreparable harm arises from "[t]he total destruction of a business." *Blossom S., LLC v. Sebelius*, No. 13-CV-6452L, 2013 WL 4679275, at \*1 (W.D.N.Y. Aug. 30, 2013). Second, "the *alleged* violation of a constitutional right . . . triggers a finding of irreparable harm," *Jones v. Wolf*, 467 F. Supp. 3d 74, 93 (W.D.N.Y. 2020) (quoting *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996)), such that "no further showing of irreparable injury is necessary," *id.* (quoting *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984)).

If not stopped by April 1, 2025, Defendants will nullify all of Plaintiff's contracts and prohibit Plaintiff from providing FI services in New York going forward. Thus, Plaintiff will both lose its existing sources of income and the right to perform services in New York going forward, and will thus "effectively be put out of business." *Blossom S., LLC*, 2013 WL 4679275, at \*1. In destroying Plaintiff's business, Defendants will violate Plaintiff's rights under the Equal Protection, Contracts, Due Process, Takings, Commerce, and Bill of Attainder Clauses of the U.S. Constitution. As a result, Plaintiff demonstrates imminent irreparable harm to support an injunction.

2.    **Defendants' Creation of a FI Monopoly
That Categorically Excludes Plaintiff Violates the Equal Protection Clause**

The Fourteenth Amendment's Equal Protection Clause, which directs that no state shall

"deny any person within its jurisdiction the equal protection of the laws," U.S. Const. Amend.

XIV, § 1, "embodies a general rule that States must treat like cases alike," *Winston v. City of Syra-

cuse*, 887 F.3d 553, 560 (2d Cir. 2018) (quoting *Vacco v. Quill*, 521 U.S. 793, 799 (1997)). Statutes

that do not impact a protected class are reviewed for a rational basis, which "imposes a requirement

of some rationality in the nature of the class singled out." *Id.* at 560 (quoting *Rinaldi v. Yeager*,

384 U.S. 305, 308-09 (1966)). Such review "is not meant to be 'toothless.'" *Windsor v. United

States*, 699 F.3d 169, 180 (2d Cir 2012); *see Winston*, 887 F3d at 567 (policy of cutting off tenant's

water due to landlord's failure to pay lacks a rational basis); *DoorDash, Inc. v. City of New York*, ---

F Supp 3d ---, 2023 WL 6118229, at *22 (S.D.N.Y. Sept. 19, 2023) (imposition of fee on one type

of food delivery service but not another could lack rational basis); *Consol. Edison Co. v. Pataki*, 117

F. Supp. 2d 257, 264 (N.D.N.Y. 2000) (statute singling out particular power providers "does not rest

upon some ground of difference fairly and substantially related to the object of the statute"); *Immac-

ulate Heart Cent. Sch. v. N.Y. State Pub. High Sch. Athletics Ass'n*, 797 F. Supp. 2d 204, 216

(N.D.N.Y. 2013) (classification of public and nonpublic schools for athletics divisions could have "a

complete and utter lack of rational relationship between the disparity of treatment and some legiti-

mate governmental purpose" (internal quotation marks omitted)); *Barletta v. Rilling*, 973 F. Supp.

2d 132, 139-40 (D. Conn. 2013) (finding no rational basis for law prohibiting all felons from serving

as precious metal dealers); *Gallivan v. Cuomo*, 71 Misc 3d 589, 597-602 (Sup. Ct. Erie County 2021)

(enjoining implementation of bar curfew as likely lacking a rational basis); *see also St. Joseph Ab-

bey v. Castille*, 712 F.3d 215, 226 (5th Cir. 2013) (finding that there was no legitimate governmental

purpose in economic protection and that there was "no rational relationship . . . between public health

and safety and restricting intrastate casket sales to funeral directors"); *Merrifield v. Lockyer*, 547 F.3d 978, 986 (9th Cir. 2008) (finding that "if [a] statute is *unrelated* to" the government's stated "interests in public health and safety and consumer protection," a challenged licensing requirement "lacks a rational basis").

By excluding Plaintiff, Defendants deny Plaintiff equal protection of the law. There is no rational basis for creating a monopoly for FI services in New York and then excluding Plaintiff from eligibility to bid for that monopoly because Plaintiff is a New York FI. *See, e.g.*, *Alice Peck Day Mem'l Hosp. v. Smith,* No. 2:21-cv-102, 2022 WL 850745, at *11 (D. Vt. Mar. 22, 2022) (finding that a Vermont law which created a discriminatory Medicaid reimbursement scheme at the expense of out-of-state hospitals could violate the Equal Protection Clause as the disparity in payment rates "discourage[d] out-of-state hospitals from treating Vermonters who receive Medicaid," which was "contrary to Vermont's purported objectives of increasing access to affordable and high quality health care" (internal quotation marks omitted)); *Mary Hitchcock Mem'l Hosp. v. Cohen*, No. 15-cv-453-LM, 2016 WL 1735818, at *11 (D.N.H. May 2, 2016) (denying a motion to dismiss an Equal Protection claim, noting that the state's "goal of using its own resources to benefit its citizens by paying less to out-of-state hospitals and more to in-state hospitals is not a legitimate state interest"). Simply put, Defendants lack any legitimate reason for excluding all New York FI providers, including Plaintiff, from the right to provide FI services in New York. By cutting Plaintiff (and all other New York FI providers) out of the FI business in New York in favor of a single out-of-state provider, Defendants violate Plaintiff's equal protection rights.

**3.    Defendants' Nullification of Plaintiff's Contracts Violates the Contracts Clause**

The Constitution's Contract Clause directs that "[n]o State shall . . . pass any . . . law impairing the obligation of contracts." U.S. Const. art. I, § 10. Factors courts consider in determining whether government interference with contracts rises to the level of a Contracts Clause violation

6

include "the extent to which reasonable expectations under the contract have been disrupted," *Sanitation & Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 993 (2d Cir. 1997), such as whether contract parties in a regulated industry could expect their contracts would be "subject to further legislation upon the same topic," *Energy Reserves Grp. v. Kan. Power & Light Co.*, 459 U.S. 400, 411 (1983). Thus, a constitutional violation is most likely "when the challenged government legislation was wholly unexpected," *Sanitation & Recycling Indus., Inc.*, 107 F.3d at 993, and does not provide for "gradual applicability or grace periods," *Allied Structural Steel Co. v. Spannus*, 438 U.S. 234, 247 (1978). Even where government can articulate a valid public purpose behind contractual impairment, such impairment violates the Contracts Clause if it is not narrowly tailored to further that purpose. *See Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 369 (2d Cir. 2006); *see also Wash. Health Care Ass'n v. Arnold-Williams*, 601 F. Supp. 2d 1224, 1233-34 (W.D. Wash. 2009) (finding that a statute violated the Contract Clause by preventing a boarding home from withdrawing from Medicaid and transferring residents).

Defendants threaten to nullify *all* of Plaintiff's contracts to provide FI services, as well as all other FI provider contracts in New York, and granting a monopoly to PPL. This will not only destroy Plaintiff's sole source of income, but endanger Plaintiff's performance under its insurance, vendor, employment, and leasehold agreements. Defendants do so on the basis of an unexpected, vastly overreaching law that lacks any semblance of gradual applicability but instead annihilates an entire competitive industry in New York. The Court should grant an injunction to prevent this brazen violation of the Contracts Clause.

**4.    Defendants' Destruction of Plaintiff's Business Violates the Due Process Clause**

The Fourteenth Amendment's Due Process Clause protects against government action that forbids a business "from realizing any profit whatsoever," *Park Ave. Tower Assocs. v. City of*

7

*New York*, 746 F.2d 135, 139-40 (2d Cir. 1984), or denies a business any ability to make economic use of its property, *Fed. Home Loan Mortg. Corp. v. N.Y. State Div. of Hous. & Cmty. Renewal*, 83 F.3d 45, 48 (2d Cir. 1996). Such a deprivation violates the Due Process Clause where "there is no rational relationship between the legislation and a legitimate legislative purpose." *Molinari v. Bloomberg*, 564 F.3d 587, 606 (2d Cir. 2009).

Defendants' decision to wipe out New York's existing FIs in favor of a single out-of-state FI is arbitrary and unconnected to any legitimate regulatory purpose. There is certainly no benefit to Consumers from a monopoly. Defendants' blunderbuss attack on Plaintiff and all other New York FIs does not bear a rational relationship to any purpose of improving CDPAP or Consumer care, and thus violates Due Process.

**5.    Defendants' Elimination of Plaintiff's Property Rights without Compensation Violates the Takings Clause**

The Fifth Amendment's Takings Clause, made applicable to States by the Fourteenth Amendment, prohibits "private property to be taken for public use, without just compensation." U.S. Const. Amend. V. Similar to Due Process violations, *see* Point 4, *supra*, government action may violate the Takings Clause when it eliminates a business's ability to make economic use of its property or turn a profit, *see Fed. Home Loan Mortg. Corp.*, 83 F.3d at 48; *Park Ave. Tower Assocs.*, 746 F.3d at 139-40. As the Supreme Court put it: "When the owner of [] property has been called upon to sacrifice all economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992).

By giving PPL a monopoly on all FI work in New York, Defendants will effectively appropriate Plaintiff's contracts and deliver them to another private party. In this respect, Defendants' conduct threatens a devastating economic impact on Plaintiff, defies all reasonable expectations

for businesses in the New York FI industry, and disregards the public interest to enrich PPL—

failing all three factors that the Supreme Court applies to the government in Takings Clause cases.

*See Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978). Given that Defendants

offer no compensation to Plaintiff for destroying its business, Defendants threaten to carry out a

*per se* taking and an injunction is warranted.

**6.      Defendants' Interference in Plaintiff's
         Business Violates the Commerce Clause**

The Commerce Clause delegates to Congress authority to "regulate Commerce . . . among

the several States." U.S. Const. art. I, § 8, cl. 3. The "dormant" Commerce Clause forbids states

from interfering in "a national market for competition." *Brown & Williamson Tobacco Corp. v.*

*Pataki*, 320 F.3d 200, 208 (2d Cir. 2003). Thus, "[s]tate laws discriminating against interstate com-

merce on their face are 'virtually *per se* invalid.'" *Fulton Corp. v. Faulkner*, 516 U.S. 325, 331

(1996) (quoting *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99 (1994)).

Defendants' wholesale exclusion of New York FIs from the right to conduct their business

in the State violates the dormant Commerce Clause by eliminating competition and monopolizing

an industry. The benefit PPL will enjoy from this monopoly, and Plaintiff's exclusion from the

bidding for it, stem purely from "the location of [their] business." *Am. Trucking Ass'ns v. Scheiner*,

483 U.S. 266, 286 (1987). Further, Defendants' attack on competition in the FI market is so ex-

treme that it imposes a burden "on such commerce [that] is clearly excessive in relation to" any

benefits it could confer on New York residents, *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142

(1970), and is obviously not the only means Defendants have at their disposal to reform CDPAP,

*see United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338-39

(2007). The Court should enjoin Defendants from violating the Commerce Clause.

9

**7.    Defendants' Punitive Acts Constitute a Bill of Attainder**

Under the Bill of Attainder doctrine, the Constitution prohibits government action that imposes punishment without trial. *See* U.S. Const. art. I, § 10, cl. 1. A prohibited bill of attainder "imposes the sorts of 'deprivations and disabilities so disproportionately severe and so inappropriate to nonpunitive ends that they unquestionably have been held to fall within the proscription of [the Clause].'" *Consol. Edison Co. v. Pataki*, 292 F.3d 338, 351 (2d Cir. 2002) (quoting *Nixon v. Adm'r of Gen. Servs.*, 433 US 425, 473 (1977)). In determining whether a statute is an impermissible bill of attainder, a court asks "whether the law under challenge, viewed in terms of the type and severity of burdens imposed, reasonable can be said to further nonpunitive legislative purposes," *id.*, and whether law "inflicts punishment on specifically designated individuals or entities without the benefit of judicial trial," *Consol. Edison Co.*, 117 F. Supp. 2d at 266 (citing *United States v. Brown*, 381 U.S. 437, 448-49 (1965)).

Defendants' conduct will have a decisively punitive impact on specifically designated entities: it will destroy Plaintiff and all other New York FIs. The Governor has even emphasized this punitive impact by baselessly accusing the entire New York FI industry of engaging in fraud. The Court should prevent Defendants from deeming all New York FIs collectively guilty of fraud and eliminating them, all without a single trial.

**8.    The Balance of Hardships and Equities Favors Plaintiff**

Defendants' threatened destruction of the New York FIs establishes a likelihood of success on the merits of Plaintiff's constitutional claims as described above, but at the very least raises "sufficiently serious questions going to the merits to make them a fair ground for litigation." *Rochester Drug Co-op.*, 466 F. Supp. 3d at 348 (quoting *XL Specialty Ins. Co. v. Level Glob. Inv'rs, L.P.*, 874 F. Supp. 2d 263, 271 (S.D.N.Y. 2012)). If the Court finds that Plaintiff meets the "sufficiently serious questions" burden, it should also find that the balance of hardships supports an injunction.

10

Plaintiff has shown that without an injunction, Defendants will destroy Plaintiff's business along with the entire New York FI industry on April 1, 2025. Courts widely recognize "being 'driven out of business . . . before a trial could be held'" as a "real hardship" that merits an injunction. *Hunter v. Cortland Hous. Auth.*, 714 F. Supp. 3d 46, 56 (N.D.N.Y. 2024) (quoting *Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.*, 601 F.2d 48, 58 (2d Cir. 1979)). Relatedly, the equities and public interest profoundly support an injunction, as Defendants seek to upend hundreds of thousands of critical caregiving relationships with vulnerable populations to hand a monopoly over all FI business in New York to a single out-of-state company.

## Conclusion

The Court should issue a preliminary injunction prohibiting Defendants from nullifying, terminating, modifying, or interfering with Plaintiff's contracts to provide FI services in New York State or Plaintiff's relationships with recipients of services under CDPAP.

Dated: December 17, 2024                    **BOND, SCHOENECK & KING, PLLC**

*Edward Hourihan*

Edward P. Hourihan, Jr., Esq.
Roger A. Bearden, Esq.
Jeremy M. Sher, Esq.
*Attorneys for Plaintiff*
350 Linden Oaks, Third Floor
Rochester, New York 14625
(585) 362-4700
hourihe@bsk.com
rbearden@bsk.com
jsher@bsk.com