

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF REGIONAL OFFICES
ROCHESTER REGIONAL OFFICE

February 24, 2025

**VIA CM/ECF FILING**

Hon. Elizabeth A. Wolford
Chief United States District Judge
Western District of New York
100 State Street
Rochester, New York 14614

Re:  **Glidedowan, LLC v. NYS Dep't of Health et al.**
 **W.D.N.Y. Civ. No. 24-cv-6731**

Dear Chief Judge Wolford:

This office represents the Defendants New York State Department of Health ("DOH" or the "Department) and James V. McDonald, Commissioner of the DOH (hereinafter collectively, the "Defendants") in the above-captioned action. Plaintiff Glidedowan, LLC's motion for preliminary injunctive relief (Dkt. No. 2) was heard by the Court in this action on February 5, 2024.

In view of the Court's questions at oral argument concerning the status and disposition of a related action brought by Plaintiff in New York state court (*viz.*, concerning transfer of CDPAP-related consumer data and notifications to consumers), I write to update Your Honor concerning a Decision and Order issued late Friday, February 21, by Supreme Court, Livingston County, in the matter of Glidedowan, LLC v. New York State Dep't of Health et al., Livingston County Sup. Ct. Index No. 000009-2025 (Van Allen, J.S.C.). (Copy attached.) Justice Van Allen denied Glidedowan's motion for preliminary injunctive relief and dismissed the underlying Article 78 Petition, finding that the Petitioner failed to establish a likelihood of success on a number of statute-based claims, or demonstrate that the state's actions were arbitrary and capricious. The Court likewise denied a motion brought by a group of fiscal intermediary entities to intervene in the proceeding.

Please feel free to contact the undersigned with any questions or concerns Your Honor may have with respect to this submission.

Respectfully submitted,

/s/ Kyle W. Sturgess

Kyle W. Sturgess
Assistant Attorney General

cc: Edward P. Hourihan, Jr., Esq.  (*via CM/ECF*)
BOND, SCHOENECK & KING, PLLC
*Attorneys for Plaintiff*
350 Linden Oaks
Third Floor
Rochester, New York 14625

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF LIVINGSTON

---

GLIDEDOWAN, LLC
d/b/a ALL-AMERICAN HOMECARE,

       Petitioner,

-and-

AASHA SERVICES, INC., d/b/a AASHA HOME
CARE; ALASTAR FAMILY & SENIOR IN-HOME
CARE, LLC; ALLCARE HOMECARE AGENCY
INC., d/b/a VIVID CARE; BANGLA CDPAP
SERVICES, INC.; BEST HELP HOME CARE
CORP.; CAREAIDE DIRECT, INC.; CARE
FINDERS LLC d/b/a LA FAMILIA HOME CARE;
CAREFIRST CDPAP, CORP; CELESTIAL CARE,
INC.; EASY CHOICE AGENCY, INC.; ELIM HOME
CARE AGENCY, LLC; ENRICHED HOME CARE
AGENCY, INC.; HOME CHOICE LLC;
INTERNATIONAL HOME CARE SERVICES OF
NEW YORK, LLC; JUST CARE, LLC; LOYALTY
CDPAP, LLC; MAGIC HOME CARE FI LLC; SAFE
HAVEN HOME CARE, INC.; SUNDANCE HOME
CARE, INC.; THE DORAL INVESTORS GROUP,
LLC d/b/a HOUSE CALLS HOMECARE

**Decision and Order**
**Index No. 000009-2025**

      Proposed Intervening Petitioners

 -vs-

NEW YORK STATE DEPARTMENT OF HEALTH,
JAMES V. MCDONALD, in his official capacity
as Commissioner of the New York State
Department of Health, and MICHAEL
LEWANDOWSKI, in his official capacity as a
representative of the New York State Department
of Health Insurance Programs,

       Respondents.

---

Petitioner, Glidedowan, LLC filed a hybrid Article 78 and Declaratory Judgment action by Verified Petition, and moves by Order to Show Cause for an order preliminarily enjoining and restraining Respondents from directing Petitioner to convey to any third party:

> a) any data or records containing identifiable information of consumers served by Petitioner, and
> b) any data or records containing identifiable information of consumers served by Petitioner, and
> c) any data or records contained in Petitioner's personal assistant personnel files, including but not limited to health assessment and immunization records, and
> d) any notifications to consumers concerning an anticipated transition involving the Consumer Directed Personal Assistance Program, and
> e) any notifications to personal assistants concerning a transition involving the Consumer Directed Personal Assistance Program.

The Court briefly granted an Ex Parte TRO restraining Respondents, but following a brief conference with the parties, struck the TRO until the return date for arguments on the preliminary injunction.

The Verified Petitioner alleges as follows: Petitioner is a Consumer Directed Personal Assistant Program (CDPAP) Fiscal Intermediary operating pursuant to the regulations of the Respondent Department of Health (DOH) (Petition, paragraph 8). CDPAP is a homecare program designed to help Medicaid-eligible individuals in need of assistance to remain in their homes receiving self-directed home care (Petition, paragraph 12, NY Social Service Law § 365). CDPAP is a non-mandated Medicaid program, in which New York State participates, providing personal care services. The plan is funded by both state and federal dollars (Petition, paragraph 13).

The program permits people to choose from several hundred qualified home care agencies approved by the state to deliver CDPAP services, while Fiscal Intermediaries (FIs) provide support services as outlined in the DOH regulations. These support services include: ensuring the health status of the personal assistants (PAs) ; managing and processing the PAs' wages and

benefits; maintaining personnel records for each PA; maintaining records for each consumer/patient including all documentation regarding authorizations for home health care; and monitoring the consumers ability to fulfill their responsibilities under CDPAP. The Fiscal Intermediaries also enter into contracts with regional Departments of Social Services or Medicaid Managed Care Organizations covering its services, and enter into Memoranda of Understanding with each consumer to establish the parties' responsibilities under CDPAP (Petition, paragraph 21).

Petitioners allege that in the Spring of 2024, the NYS Legislature enacted amendments to NYS Social Services Law § 265-f which:

> a) effectively nullified all of the private contracts FIs have with MMCOs and counties and terminated the services provided by the FIs effective April 1, 2025;
> b) provided for selection of a Single FI (SFI) to replace Petitioner and the roughly 500 other FIs located throughout the state;
> c) authorized the issuance of an RFP to select the new SFI going forward (Petition, paragraph 32).

Petitioner asserts that actions have been commenced in both state and federal court challenging the RFP's bidding criteria which they claim was designed to "disqualify all but a tiny fraction of New York State FIs from even bidding and enabled Respondents to award the SFI contract and subcontracts to its pre-selected, out of state beneficiary as political payback for political support from Public Employee Union SEIU 1199" (Petition, paragraph 32). Public Partnerships, LLC (PPL) is the entity which won the bid and was selected as the SFI.

Petitioner seeks a permanent injunction enjoining Respondents from:

> 1. requiring Petitioner to provide lists of consumers, PAs and their contact information to any third party; and
> 2. requiring Petitioner to provide information from PAs' personnel files, including but not limited to health assessment and immunization records; and
> 3. directing Petitioner to notify Consumers and PAs of Respondents' planned transition to PPL; and

4. directing Petitioners to make any representations, endorsements, or statements of any kind regarding PPL; and
5. imposing sanctions or punishment of any kind on Petitioner if it fails to comply with Respondent' aforementioned directives or,
6. in the alternative, compelling Respondents to fairly compensate Petitioner for the value of its lists of Consumers and PAs, and for the value of any conveyed information now or hereafter contained in and requested from the PAs' personnel file, and for the work needed to reformat any and all information and if so ordered, an evidentiary hearing to establish the value of said information, and
7. awarding Petitioner the costs and disbursements associated with this action, together with such other and further, and additional relief as to the Court seeks just and proper.

## Preliminary Injunction

CPLR § 6301 gives a Court the authority to grant preliminary injunctive relief:

> A preliminary injunction may be granted in any action where it appears that the defendant threatens or is about to do, or is doing or procuring of suffering to be done, an act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual, or in any action where the plaintiff has demanded and would be entitled to a judgment restraining the defendant from the commission or continuance of an act, which, if committed or continued during the pendency of the action, would produce injury to the plaintiff. . . .

In order for a party to obtain a preliminary injunction, the party must establish that (1) there is a likelihood of ultimate success on the merits, (2) that there is a prospect of irreparable harm if the relief is not granted, and (3) that the balance of equities favor the moving party (see Doe v Axelrod, 73 NY2d 748 [1988]; John G. Ullman & Assoc., Inc. v BCK Partners, Inc., 139 AD3d 1358 [4th Dept 2016]). A preliminary injunction is a drastic remedy and should be issued cautiously (see Uniformed Firefighters Assn. of Greater New York v. City of New York, 79 NY2d 236 [1992]). This relief "should be awarded sparingly,

and only where the party seeking it has met its burden of providing both the clear right to the ultimate relief sought and the urgent necessity of preventing irreparable harm" (City of Buffalo v. Mangan, 49 AD2d 697 [4th Dept 1975]).

"A court evaluating a motion for a preliminary injunction must be mindful that '[t]he purpose of a preliminary injunction is to maintain the status quo, not to determine the ultimate rights of the parties'" (Keller v Kay, 170 AD3d 978 [2d Dept 2019], quoting Masjid Usman, Inc. v Beech 140, LLC, 68 AD3d 942 [2d Dept. 2009]). "Irreparable injury, for purposes of equity, has been held to mean any injury for which money damages are insufficient" (McLaughlin, Piven, Vogel v W.J. Nolan & Co., 114 A.D.2d 165, 174 [2d Dept. 1986]). "Where . . . a litigant can be fully recompensed by a monetary award, a preliminary injunction will not issue" (Prince Paper & Twine Co. v Miller, 182 A.D.2d 748, 750 [2d Dept 1992]).

Here, Petitioner seeks permanent injunctive relief, or in the alternative a determination "compelling Respondents to fairly compensate Petitioner for the value of its lists of Consumers and PAs, and for the value of any conveyed information now or hereafter contained in and requested from the PAs' personnel files, and for the work needed to reformat any and all information and if so ordered, an evidentiary hearing to establish the value of said information" (see Verified Petition Wherefore Clause). Thus, by virtue of a plain reading of Petitioner's own Petition, there is no irreparable harm here that cannot be rectified with monetary damages.

Petitioner fails to demonstrate irreparable harm, and the application for a preliminary injunction is consequently denied. Given Petitioner's failure to establish irreparable harm, the Court need not address the likelihood of success on the merits and balancing of the equities.

However, even assuming arguendo, that Petitioner had established irreparable harm, they have not established a likelihood of success on the merits or a balancing of the equities. Petitioners have failed to establish a likelihood of success on the merits in that the NYS DOH was required to continue their contract for services, the Legislature was without authority to

5

amend Social Services Law and/or that the award of the contract to an SFI under the legislative amendment was arbitrary and capricious. Although some of these issues and claims are pending in Federal Court, for purposes of a preliminary injunction in this matter, Petitioner has failed to meet the requisite standard. Lastly, Petitioners have failed to establish a balancing of equities in their favor, especially in light of the Court's duty to ensure that the Consumers are provided necessary services.

The Court initially considered granting a preliminary injunction permitting the release of the records only to Respondents for items listed in the Verified Petition under the Wherefore Clause 1-6. However, in review of the Petitioner's contractual obligations, Petitioner's request for injunctive relief is denied *in toto* (affirmation of Amir Bassiri dated January 29, 2025 with attached Ex 1-9, mainly Ex 5 Contract). The contract provides the obligations of the Petitioner post termination:

> "Upon termination, FI [Petitioner] shall: (1) assist in effecting an orderly transfer of services and obligations to another FI to which MCO has assigned consumers to prevent any disruption in services to such consumers; (2) provide MCO and NYSDOH with access to all books, records and other documents relating to the performance of services under this Agreement that are required or requested, at no charge; and (3) subject to applicable laws and regulations, stop using and return and/or destroy all proprietary information. This provision shall survive the termination of the Agreement regardless of the reason" (Exhibit 5, paragraph 12).

In reviewing that term and applying the rules of contract interpretation, finding the intent of the parties within the four corners of the agreement where the terms are clear and unambiguous, the Petitioner clearly agreed to a process when the contractual obligations terminated which was within one year of the signing of the agreement (see Arista Development, LLC v Clearmind Holding, LLC, 207 AD3d 1127,1128 [4th Dept 2022]).

## Permanent Injunction

The parties agreed at the virtual appearance held on February 5 that the matter is fully submitted, and that in addition to the request for preliminary injunction, the Court is in a position to decide the merits of the case.

Petitioner argues that this case essentially involves four issues: Privacy Laws, the Duty to notify the consumers, Free Speech, and the Takings Clause. Respondent counters that the request for injunctive relief should be denied and the Petition dismissed because the actions of Respondent DOH are authorized under the SSL and related regulations, that the Petitioner is not exempt from the notice requirements set forth in SSL § 365-f (4-d)(a)(i), that rational basis review should be applied to the requested data transfer and notices, that HIPAA does not exempt Petitioner from the disclosures required by state law, that protected health information may lawfully be shared between covered entities and with DOH as a health oversight agency, the notices required are not improper marketing materials sent with a commercial purpose, and that consumer and PA information for a public program like Medicaid do not constitute trade secrets (and even if they did, that the change in state law has rendered them with no economic value). Finally, Respondents argue that the Petition should be dismissed because it fails to name a necessary party: Public Partnerships, LLC – the newly selected SFI.

This Court agrees with Respondent that HIPAA allows for the sharing of protected health information between covered entities for the purpose of healthcare operations without individual consent. This Court also agrees with Respondent that Petitioner is not exempt from SSL § 365-f (4-d)(a)(i). Regardless of Petitioner's claim that the requests and directives from Respondent DOH are "masks" for "laundering" information, Petitioner lacks standing to challenge DOH sharing information with PPL. Based on these findings, Petitioner's first through fifth requests for injunctive relief are denied. The new law, as enacted, requires compliance with the provision of requested information and notice to consumers. These requests and directives are reasonably related to a legitimate government interest. This Court has

analyzed the arguments under the standard put forth in Zauderer v Office of Disciplinary Counsel of Supreme Court of Ohio, 471 US 622 [1985]. Even if it were to apply the heightened standard of scrutiny, this Court finds that the actions of DOH have not been arbitrary and capricious, and that these actions directly advance a substantial government interest. Central Hudson Gas and Electric Corp. v Public Service Commission of NY, 447 US 557 [1980]. This Court declines to award Petitioner any compensation as requested in their seventh request for relief. As SSL § 363-c(4) has indicated that "all recipients of medical assistance program funds shall make available to the commissioner [of DOH] . . . in a prompt fashion all fiscal and statistical records and reports . . . and all underlying books, records documentation and reports, which may be requested by the commissioner or the director of the division of the budget as may be determined necessary to manage and oversee the Medicaid program", the data and reports requested must be disclosed as requested without compensation. There is no need for a hearing to determine the value of this information. Based on the denial of the first through sixth requests for relief, This Court also declines to award Petitioner costs and disbursements relative to this action. All other arguments and requests by Petitioner not specifically addressed herein have been considered and are denied.

Intervention

AASHA Services, INC d/b/a AASHA Home Care, et al, move to intervene pursuant to CPLR §1013. Another Petitioner entity, Consumer Directed Personal Assistance Association of New York ("CDPAANYS") also moved to intervene, but they withdrew the application by notice dated January 21, 2025.

Based upon the above analysis of the Petition, and the dismissal thereof, the Motion to Intervene is rendered moot and subsequently denied.

Accordingly, based on the foregoing, it is

ORDERED that Petitioner's request for a preliminary injunction is **denied**; and it is further

ORDERED that each of Petitioner's requests for relief are **denied** and the Petition is **dismissed,** and it is further

8

ORDERED that Intervening Petitioner's motion is **denied.**

Based upon this decision and order, the appearance scheduled for February 26, 2025 is canceled.

Signed at Geneseo, New York this 21st day of February 2025

_[signature]_

Hon. Kevin G. Van Allen
Acting Justice, Supreme Court